UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20323-CR-ALTONAGA

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.

**TIFFANY FOSTER**,

    Defendant.
_____/

## MOTION TO DISMISS

Tiffany Foster, by and through undersigned counsel and pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3282, hereby moves this Honorable Court enter an Order dismissing the indictment in this matter, and in support thereof states:

### FACTS

On May 8, 2014, Ms. Foster was indicted in the Southern District of Florida. (DE 3.) Subsequently, the indictment was superseded on September 25, 2014. (DE 142.) Ms. Foster stands accused of one count of conspiracy to commit health care and wire fraud in violation of 18 U.S.C. § 1349 (Count 1), and one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count 9). The indictment alleges that that the conspiracy charged in Count 1 existed from April of 2003 until at least September of 2012; as to Count 9, the overt acts as to Ms. Foster are alleged to have been committed on September 6, 2005. (DE 142 at p.17.)

The government is aware, and it is undisputed, that on September 13, 2005, Ms. Foster terminated her relationship with Hollywood Pavilion and communicated this fact to the alleged

co-conspirators. (See September 12, 2005 letter to Karen Kalen-Zury (attached hereto as "Exhibit A.").) After the letter was sent, Ms. Foster no longer worked in association with the alleged co-conspirators, or had any further involvement in the alleged conspiracy

## ARGUMENT AND LAW

Pursuant to 18 U.S.C. § 3282, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." The statute of limitations applicable to the offenses charged in the indictment is five years.

As a general principle, a "conspiracy may be deemed to continue as long as its purposes have neither been abandoned nor accomplished," United States v. Coia, 719 F.2d 1120, 1124 (11th Cir. 1983), and under such reasoning the conspiracy Tiffany is alleged to have been a member of from 2003 to 2005 continued well into the statute of limitations period. However, that general principle does not end the statute of limitations issue in this case. The answer to whether Tiffany withdrew from the conspiracy in 2005 is determinative of her liability in this case because the statute of limitations begins to run from the date a person withdraws from a conspiracy. "Withdrawal also starts the clock running on the time within which the defendant may be prosecuted, and provides a complete defense when the withdrawal occurs beyond the applicable statute-of-limitations period." Smith v. United States, 133 S.Ct. 714, 719 (2013).

In United States v. Arias, 431 F.3d 1327, 1340-41 (11th Cir. 2005), the Eleventh Circuit set forth the test for withdrawal:

> [F]irst, the defendant must prove that he has taken affirmative steps to defeat the objectives of the conspiracy; and second, he must show either that he made a reasonable effort to communicate these acts to his co-conspirators or disclosed the scheme to law enforcement authorities. Mere cessation of participation is not sufficient to establish withdrawal; the accused must also establish that he communicated his withdrawal either to his co-conspirators or to law enforcement.

> The accused participant is not required to notify "each other member" that he will no longer participate, but the acts of withdrawal must be "communicated in a manner reasonably calculated to reach co-conspirators."

Arias, 431 F.3d at 1340-41 (internal citations omitted).  In 2005, Tiffany became concerned with complaints some of her clients had about Hollywood Pavilion.  In September 2005, after one month had passed and Tiffany's concerns were not addressed, she quit working with Hollywood Pavilion and sent the letter attached as "Exhibit A" to the CEO of Hollywood Pavilion.  After departing Hollywood Pavilion, Tiffany never returned, never sent any patients there and never received any payments from Hollywood Pavilion: She completely disassociated with the conspiracy.

As is shown by Arias, Tiffany withdrew from the conspiracy.  In Arias, Dr. Pedro Sarduy was charged with, and convicted of, a § 371 Conspiracy to defraud the United States in connection with Medicare billing. (See United States v. Arias, et al., Southern District of Florida, Case Number 00-683, Superseding Indictment (DE 737); Arias, supra.)  On appeal Sarduy challenged his conviction by asserting that the trial court erred in refusing to instruct the jury as to his withdrawal defense.  There was no contention that Sarduy continued to be involved in the conspiracy after he disassociated with it.  As with Tiffany, the question was whether or not the letter Sarduy sent was sufficient, coupled with his disassociation to constitute withdrawal:

> Sarduy argues that the evidence provides a sufficient foundation for a jury to infer that he had withdrawn from the conspiracy, and that withdrawal had been communicated to Jose Arias, the head of the scheme.  First, he presents an August 28, 1995 letter to Blue Cross/Blue Shield, as administrator for Medicare Part B, wherein he advised them that he was no longer seeing patients at First Option, and requested his cancellation as provider at First Option.  Sarduy's expert testified that a physician could reasonably assume that by notifying Medicare that he was no longer working for a particular clinic, Medicare would notify any other participating providers.  Citing this expert testimony, Sarduy argues that the letter to Blue Cross/Blue Shield therefore constituted a communication "reasonably calculated" to reach Jose Arias, the scheme's principal.

> Additional evidence indicates that his communication of withdrawal was indeed successful, bolstering his claim. Days after he mailed the August 28, 1995 letter to Blue Cross/Blue Shield, his name was crossed out from the list of individual provider numbers on First Option Medical Center's Medicare electronic billing enrollment form.

United States v. Arias, 431 F.3d at 1341 (notes omitted). The Eleventh Circuit was satisfied with Sarduy's letter despite the facts that (1) it did not indicate there was any criminal conduct occurring at First Option and (2) it was not even sent to the co-conspirators. See also United States v. Aldea, 174 Fed.Appx. 52, 59-60 (3d Cir. 2006) ("To prove withdrawal, the defendant must present evidence of some affirmative act of withdrawal, typically either a full confession to authorities or a communication to co-conspirators that he has abandoned the criminal enterprise and its goals."); United States v. Piper, 298 F.3d 47 (1st Cir. 2002) (same); United States v. Patel, 879 F.2d 292 (7th Cir. 1989) (same); United States v. Battista, 646 F.2d 237, 246 (6th Cir. 1981) (approving jury instruction which gave example of withdrawal as "by communicating to his co-conspirators his abandonment by some effective means."); United States v. U.S. Gypsum Co., 438 U.S. 422 (1978) (the Supreme Court indicated it would have reversed only on jury instructions which did not permit the jurors to find withdrawal in situations where there is a cessation of activity coupled with some form of communication).

It is undisputed that Tiffany communicated here withdrawal from the conspiracy to its members on September 13, 2005. At that point, the five-year limitations period began. In United States v. Craft, 105 F.3d 1123 (6th Cir. 1997), the Sixth Circuit discussed the efficacy of a trial court ruling upon a Rule 12(b) motion to dismiss that alleges a statute of limitations defense:

> It is elementary that Rule 12(b) of the Federal Rules of Criminal Procedure permits pretrial consideration of any defense that "is capable of determination without the trial of the general issue." Courts usually say that a motion to dismiss

>is "capable of determination" before trial if it involves questions of law instead of questions of fact on the merits of criminal liability.
>
>Normally, Rule 12(b) motions may appropriately raise for consideration such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity and lack of jurisdiction. District courts may ordinarily make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder.
>
>Rule 12 was written to encourage the making of motions prior to trial. Notes of Advisory Committee to the 1975 Amendments to Fed. R. Crim. P. 12 (advising district courts to defer rulings on pretrial motions only for good cause). Rule 12 directs the district court to make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion as long as the court's findings on the motion do not invade the province of the jury. Rule 12 vests the district court with authority to "determine [preliminary] issues of fact in such a manner as the court deems appropriate." Notes of Advisory Committee to the 1975 Amendments to Fed. R. Crim. P. 12.

Craft, 105 F.3d at 1126 (internal case citations omitted); see also United States v. Ramirez, 324 F.3d 1225, 1228 (11th Cir. 2003) ("Although we recognize that there may be times when a statute of limitations defense cannot be raised before trial because the development of facts pertaining to that defense is necessary, this is not one of those times.")

In Craft, the appellate court held that because there were no facts in dispute, ruling upon the statute of limitations defense was appropriate. 105 F.3d at 1127 ("Here, the facts relating to the disposition of the statute of limitations issue are stated in the indictment or constitute preliminary facts easily isolated from the issues on the merits. These facts are essentially undisputed and raise a legal issue, not a factual one.") The overt acts alleged by the government to have been committed by Tiffany occurred on September 6, 2005 - a week prior to the date Tiffany communicated her withdrawal fro the conspiracy (September 13, 2005). The indictment makes no allegations that Tiffany did anything after that date. The existence of the letter and the fact that it was communicated, as well as the content of the letter are beyond dispute. After the

letter was sent, Tiffany did nothing to rejoin the conspiracy. Tiffany's letter sets forth a *prima facie* case of withdrawal.

"When a defendant has produced sufficient evidence to make a prima facie case of withdrawal, however, the government cannot rest on its proof that he participated at one time in the illegal scheme; it must rebut the prima facie showing either by impeaching the defendant's proof or by going forward with evidence of some conduct in furtherance of the conspiracy subsequent to the act of withdrawal." United States v. Steele, 685 F.2d 793, 804 (3d Cir. 1982); see also United States v. Ryan, 289 F.3d 1339, 1343 (11th cir. 2002) ("In laying an evidentiary foundation for entrapment, the defendant bears the initial burden of production as to government inducement; once the defendant meets this burden, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime." Here, there are no facts that are in dispute concerning Tiffany's withdrawal and the government possesses no evidence that Tiffany did anything to further the conspiracy after September 13, 2005. As such, the indictment against Ms. Foster should be dismissed.

WHEREFORE, Tiffany Foster respectfully requests the Court issue an Order dismissing Counts 1 and 9 of the indictment as to her.

Respectfully Submitted,

s/ Marshall Dore Louis
Marshall Dore Louis
Florida Bar No. 512680
SINCLAIR, LOUIS, HEATH,
NUSSBAUM & ZAVERTNIK, P.A.
Alfred I. duPont Building
169 East Flagler Street, Suite 1125
Miami, FL 33131
TEL: (305) 374-0544
FAX: (305) 381-6869
E-MAIL: mdl@sinclairlouis.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 11, 2014, I filed the foregoing document with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/ Marshall Dore Louis
Marshall Dore Louis
Florida Bar No. 512680
SINCLAIR, LOUIS
& ZAVERTNIK, P.A.
Alfred I. duPont Building
169 East Flagler Street, Suite 1125
Miami, FL 33131
TEL: (305) 374-0544
FAX: (305) 381-6869
E-MAIL: mdl@sinclairlouis.com

## SERVICE LIST

**Nicholas E. Surmacz**
U.S Department of Justice
1400 New York Avenue, NW, 3rd Floor
Washington, DC 20005
202-445-9467
Email: nicholas.surmacz@usdoj.gov
(Via CM/ECF Electronic Notification)

*Attorneys for the United States of America*

**Brian H. Bieber**
Gray-Robinson
550 Biltmore Way
Penthouse Three A
Coral Gables, FL 33134
305-416-6880
Fax: 305-446-1766
Email: brian.bieber@gray-robinson.com

**Joel Hirschhorn**
GrayRobinson, P.A.
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
305-416-6880
Fax: 305-446-6887
Email: Joel.Hirschhorn@gray-robinson.com
(Via CM/ECF Electronic Notification)

*Attorneys for Barry Kaplowitz*

**Bruce Howard Lehr**
**Andrew Keith Levi**
Lehr, Fischer, Feldman, Levi, Mendez
1401 Brickell Ave.
Suite 910
Miami, FL 33131
(305) 377-1777
Email: blehr18@aol.com
         alevi@llmlawfirm.com
(Via CM/ECF Electronic Notification)

*Attorneys for Christopher Gabel*

**Martin Alan Feigenbaum**
Martin A. Feigenbaum
#5960
250 95th Street
Surfside, FL 33154-9998
305-323-4595
Fax: 305-854-6568
Email: Miamivicelaw@aol.com
 (Via CM/ECF Electronic Notification)

*Attorney for Melvin Hunter*